BENNETT, Circuit Judge.
 

 The Gila River Pima-Maricopa Indian Community, et al., bring this appeal from a judgment entered October 8, 1982, in the United States Claims Court, denying their claim for certain water rights to the Salt River in Arizona. We
 
 affirm
 
 in part and
 
 reverse
 
 in part.
 

 The essential facts found by the trial judge are correct and will be summarized. Appellants reside on the Gila River Indian Reservation in Arizona. They claim monetary compensation for water they say could have been put to beneficial use in the irrigation of their reservation lands but which was used elsewhere by others. The claim arises under the Indian Claims Commission Act, 25 U.S.C. § 70a (1976), and was transferred to the United States Court of Claims from the Commission upon its expiration. The issue of actual damages to which appellants are entitled, if any, has been reserved for further proceedings in the event they establish appellee’s liability for depriving them of water rights claimed in the present proceeding.
 

 Appellants have been settled in villages along the Gila River in Arizona since at least the late 1600’s or early 1700’s and have farmed fields irrigated by the waters of that river. In 1859, legislation was enacted to establish a 64,000-acre reservation along the Gila River to assist the Indians in maintaining a self-sufficient status. Act of Feb. 28,1859, ch. 66, § 4,11 Stat. 388, 401. This reservation was surveyed to include all of the Indians’ planting grounds then in evidence.
 
 See Gila River Pima-Maricopa Indian Community v. United States,
 
 204 Ct.Cl. 137, 494 F.2d 1386 (Ct.Cl.),
 
 cert. denied,
 
 419 U.S. 1021, 95 S.Ct. 497, 42 L.Ed.2d 295 (1974). A series of executive orders later enlarged the reservation to its present size of 372,000 acres. One of these enlargements, in 1879, added 32,000 acres and brought the boundary of the reservation to the junction of the Gila and Salt Rivers, including in the reservation land riparian to 4 miles of the south bank of the Salt River. Except for this comparatively small part of the reservation at its extreme northwest
 
 *561
 
 corner, the reservation lies along the Gila River which bisects it from east to west and is exclusively in the Gila River watershed. The United States has constructed water storage dams and reservoirs, and developed groundwater pumping to secure a supply of water for the reservation and other settlements along the Gila River. These facilities have also been beneficial for flood control. Other than for 1,490 acres in the part of the reservation at the Salt River, mentioned above, no canal system has been developed to divert water for irrigation from the Salt River to the Gila River Indian Reservation.
 

 Appellants assert an entitlement to the waters of the Salt River to irrigate 113,498 acres of land on the Gila River Indian Reservation, representing all the practicably irrigable land on the reservation. Their claim to compensation is premised on the loss of the Salt River water which the trial judge found would, on an annual basis, require 550,465.3 acre-feet measured at the farm headgate or over 600,000 acre-feet at the diversion point, and about 4.85 acre-feet per acre per year.
 

 Appellants’ claim to Salt River water is based on the so-called
 
 “Winters
 
 doctrine.” In
 
 Winters v. United States,
 
 207 U.S. 564, 28 S.Ct. 207, 52 L.Ed. 340 (1908), the Court established the principle of “reserved” water rights for federal government lands. It held that in withdrawing federal land from the public domain and reserving it for a federal purpose such as an Indian reservation, the government, by implication, reserves appurtenant water, then unappropriated, to the extent needed to accomplish the purpose of the reservation. Applying this doctrine, the Court sustained an injunction barring those diversions by upstream landowners that deprived the Fort Belknap Reservation of water that was needed to change the nomadic habits of the Indians assigned to that reservation so as to cause them “to become a pastoral and civilized people.” 207 U.S. at 576, 28 S.Ct. at 211. The
 
 Winters
 
 doctrine was reaffirmed in Arizona v.
 
 California,
 
 373 U.S. 546, 595-601, 83 S.Ct. 1468, 1495-98, 10 L.Ed.2d 542 (1963), and
 
 Washington v. Fishing Vessel Ass’n,
 
 443 U.S. 658, 685-86, 99 S.Ct. 3055, 3074, 61 L.Ed.2d 823 (1979).
 

 Accepting the established principle cited, the court must resolve whether in creating and enlarging the Gila River Indian Reservation the United States reserved water from the Salt River for the irrigation of reservation lands. The weight of the credible evidence clearly leads to a negative answer except for the 1,490-acre segment at the extreme northwest border of the reservation. Gila River water and groundwater constituted the intended sources for irrigation of the Gila River Reservation.
 

 Appellants are contending that the
 
 Winters
 
 doctrine establishes an obligation on the United States to reserve and provide water to irrigate all of the practicably irrigable acreage on the reservation. Appellants put forth the same contention in an earlier action regarding their right to water from the Gila River.
 
 Gila River Pima-Maricopa Indian Community v. United States,
 
 684 F.2d 852 (Ct.Cl.1982). The United States Court of Claims, after noting that the
 
 Winters
 
 doctrine may not be applicable, rejected appellants’ contention, stating:
 

 But even if
 
 Winters
 
 applies fully to plaintiffs, we hold that, for monetary compensation on account of pre-August 1946 injuries under the Indian Claims Commission Act, these Indians are not entitled to damages for the failure of the defendant to supply them with all the water necessary to irrigate all the practicably irrigable acres of their reservation. The reason is that, as we have found, (a) the Indians were not in fact using more than 7,000 to 8,000 acres even when they had the full natural flow of the Gila River, and (b) they did not have the ability (i.e. capital) to build the facilities necessary for greater irrigation or to control the Gila River flow — in other words, they were unable to use more water than enough to cultivate 7,000-8,000 acres. The Indian Claims Commission Act, the aim of which was to grant monetary compensation for past (pre-August 1946) wrongs actually inflicted by the United States, does not call for damages based on theoretical
 
 *562
 
 maximum “rights” that the Indians were wholly unable to utilize and to implement at the time, especially where the Government was under no moral or legal obligation to construct new facilities so that the Indians could then use the greater amount of water they now claim. [684 F.2d at 864-65 (footnotes omitted).]
 

 We agree with the court’s analysis and believe it applies with equal force in the present action. Appellants have not established that they have been deprived of Salt River water that could actually have been put to beneficial use on the reservation, to the extent claimed.
 

 As already indicated in this opinion, however, there is one limitation to this holding. Appellants have raised and the trial judge has found in favor of their claim that they are entitled to water rights for irrigation of up to 1,490 acres in the limited northwest part of the Gila River Indian Reservation, known as the Maricopa District or Colony. As we have noted, appellants used Salt River water to irrigate land in that location.
 

 The trial judge, however, recommended dismissal of this element of the claim on the grounds that no loss of water in this area has been shown by appellants since, pursuant to an agreement on May 5, 1936, between the United States and the Salt River Valley Water Users’ Association, appellants have in fact been furnished water, not directly from the Salt River but substitute groundwater from pumped sources for irrigation of 1,079 acres.
 
 *
 
 Appellants had pleaded that this substitute water was of inappropriate quality. They offered no proof of this. Because of this failure of proof and because appellants were being furnished some water for this limited area, the trial judge concluded that appellants were not deprived of any water that they could put to beneficial use on their reservation and that, indeed, they had abandoned their claim as it pertained to the 1,490 acres.
 

 As to this part of appellants’ claim, we must disagree with the trial judge, and we order that this section of the case be reinstated by amendment of the order vacating it. We reach this conclusion on the basis of the findings made below which show that in pretrial proceedings before the Indian Claims Commission in 1974 the case was divided into three stages. The first stage was to ascertain whether the Indians had any rights to Salt River water. If such rights were found to exist, then the second stage would determine whether defendant had any liability for a deprivation of those water rights. Finally, if both issues were decided in favor of the Indians, then it would be necessary to address the issue of damages. Only the first stage is in issue now.
 

 The trial judge found an entitlement to water rights as to the 1,490 acres only. He was, therefore, in error in dismissing with respect thereto because the Indians did not establish appellee’s liability for loss of those rights or offer proof of monetary loss. Such a conclusion was premature. We express no views on the issue of damages or on the issue of liability as it may be affected by the 1936 agreement.
 

 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 

 *
 

 Apparently, prior to this alternate supply of pumped water, diversions of water upstream from the reservation often resulted in an inadequate water supply to the Maricopa District.